UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MELISSA WORK,

        Plaintiff,

v.

JP MORGAN CHASE BANK,

        Defendant.

Case No. 3:25-cv-00523-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

    Plaintiff Melissa Work brings this action against her former employer, JP Morgan Chase Bank ("Chase"), asserting claims of (1) sex discrimination in violation of O.R.S. 659A.030(1)(b), (2) retaliation in violation of O.R.S. 659A.199(1), and (3) discrimination by retaliation because she was the victim of harassment and sexual assault in violation of O.R.S. 659A.290(2)(b). Compl. ¶¶ 38-56, ECF 2-1. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Currently pending is defendant's Motion to Compel Arbitration and Dismiss Federal Court Proceedings. ECF 11. Because the parties have entered into a binding arbitration agreement, the motion to compel arbitration should be granted, and the case should be stayed while the parties complete arbitration.

1 – FINDINGS AND RECOMMENDATIONS

I.      **Relevant Law Regarding Arbitration and the Parties' Arbitration Agreement**

The Federal Arbitration Act ("FAA") is designed to "advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). By enacting the FAA, "Congress directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting 9 U.S.C. § 2).

A party to a valid arbitration agreement may "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In evaluating such a request, courts must "rigorously enforce" arbitration agreements according to their terms, including terms specifying with whom and under what rules the parties will arbitrate. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citations omitted). "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)) (emphasis in original). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

As the party seeking to compel arbitration, defendant bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The burden then shifts to plaintiff, as the party seeking to avoid arbitration, to show the agreement is inapplicable. *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1207 (N.D. Cal. 2024).

Defendant has met its initial burden of showing a valid arbitration agreement exists. When plaintiff accepted a position with defendant on November 12, 2015, she signed a "Binding Arbitration Agreement" in which she agreed that "[a]ny and all 'Covered Claims' would be submitted to and resolved by final and binding arbitration." Baros Dec., ¶ 3, Ex. A at 6–7, ECF 14-1. "Covered claims" include "all legally protected employment-related claims" against defendant that "arise out of or relate to [plaintiff's] employment or separation from employment with" defendant "including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims," and "retaliatory and/or constructive discharge." *Id.* at 7.

Plaintiff does not dispute that she entered into an arbitration agreement but contends that her claims are exempt from arbitration under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"). On March 3, 2022, Congress enacted the EFAA, which allows survivors of sexual assault or sexual harassment to invalidate arbitration agreements as follows:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The "court, rather than an arbitrator," determines the applicability of the EFAA to an arbitration agreement and the enforceability of an agreement to which the EFAA applies. 9 U.S.C. § 402(b).

The EFAA applies to "any dispute or claim that arises or accrues on or after" the date of its enactment, March 3, 2022. EFAA, Pub. L. No. 117-90, 136 Stat. 26, 28 (2022). Thus, "[i]f a

3 – FINDINGS AND RECOMMENDATIONS

sexual harassment claim accrues on or after the date of enactment, or if a sexual harassment dispute arises on or after that date, the EFAA applies[.]" *Lewis v. Tesla, Inc.,* No. 24-CV-08178-AMO, 2025 WL 2653639, at *2 (N.D. Cal. Sept. 16, 2025). Those events may occur at different times. *Hix v. Dave & Buster's Mgmt. Corp., Inc.*, No. 3:23-CV-623-AR, 2023 WL 9425283, at *8 (D. Or. Nov. 14, 2023), *report and recommendation adopted,* No. 3:23-CV-00623-AR, 2024 WL 326592 (D. Or. Jan. 29, 2024)*; see also Barnes v. Festival Fun Parks, LLC*, No. 3:22-CV-165, 2023 WL 4209745, at *10 (W.D. Pa. June 27, 2023) ("In separating and distinguishing 'dispute' and 'claim' by placing them in the disjunctive, Congress provided a spectrum relative to the [EFAA's] applicability."); *Hodgin v. Intensive Care Consortium, Inc.*, 666 F. Supp. 3d 1326, 1329 (S.D. Fla. 2023) (reading the statute as "disputes . . . arise[]" and "claims . . . accrue[]," as that is the "only way to reconcile the redundancy of saying that a claim arises *and* accrues—those dates would be the same").

Plaintiff argues both that (1) her claims accrued and (2) her dispute arose after March 3, 2022. Resp. 2, ECF 19. However, neither argument has merit.

**II.    Plaintiff's claims accrued before March 3, 2022.**

"The reference point for the accrual of [a plaintiff's] claims varies based on the cause of action." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 924 (N.D. Cal. 2023). For instance, in *Turner*, the plaintiff alleged the defendant terminated her employment due to her gender and in retaliation for her reports of harassment, and the court found that the reference point was the plaintiff's termination. *Id.*; *see also Newcombe-Dierl v. Amgen*, Case No. CV 22-2155-DMG, 2022 WL 3012211, *5 (C.D. Cal. May 26, 2022) (finding the plaintiff's "claims accrued when the adverse employment action occurred and she was injured, which was no later than . . . the date of her termination"); *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022)

(finding "[e]ach of [the plaintiff's] claims accrued at the time she experienced discrimination, harassment, or retaliation, and at the latest . . . when she left her job").

Here, plaintiff alleges that while she was receiving an award on stage at a company event on February 5, 2020, another employee yelled a sexually explicit comment. Compl. ¶ 5-10. The next day, on February 6, 2020, plaintiff told her manager that she felt humiliated by the incident. *Id.* ¶ 14. The day after that, plaintiff told her manager that she wanted the employee to be transferred to another location. *Id.* ¶ 15. Plaintiff then took a leave of absence because seeing the employee at work caused her to have panic attacks. *Id.* ¶ 17. Upon returning to work on April 27, 2020, plaintiff was assured by her supervisor that the employee had been reassigned to another branch and would not be allowed to work in the same office as plaintiff. *Id.* ¶ 21. On July 10, 2020, plaintiff was asked to temporarily work at another branch and was given assurances that the other employee would not be at that location. *Id.* ¶ 22-23. Yet, on July 16, 2020, that employee showed up at the branch and "smirked at [p]laintiff and spoke to her." *Id.* ¶ 24. When plaintiff reported this incident to the manager, she was assured it would not happen again. *Id.* ¶ 29. Despite that assurance, the employee showed up at plaintiff's work place on two further occasions: August 21 and September 1, 2020. *Id.* ¶ 27, 31. Ultimately, plaintiff quit her employment with defendant on February 17, 2021. *Id.* ¶ 34. This timeline of events shows that all of plaintiff's sexual harassment claims accrued prior to March 3, 2022. *See Walters*, 623 F. Supp. 3d at 337.

Plaintiff argues the EFAA applies because defendant retaliated against her when it disputed her entitlement to employment benefits at a hearing on February 28, 2024. Resp. 5, ECF 19. After plaintiff stopped working for defendant on February 17, 2021, she applied for unemployment benefits. On May 19, 2021, the Oregon Employment Department concluded that

5 – FINDINGS AND RECOMMENDATIONS

plaintiff quit work for good cause, and defendant timely appealed that decision. Riffle Decl., Ex. E at 2, ECF 13-2. A hearing was held on March 1, 2023, but plaintiff had moved and was unaware of the hearing date so she did not appear. Work Decl. ¶ 3, ECF 20. Defendant appeared at the hearing, and the Employment Department found that plaintiff quit work without good cause. *Id.*, Ex. A at 7. Plaintiff subsequently checked her P.O. box, found the notice of the hearing, and asked to reopen the matter. *Id.* A second hearing was then held on February 28, 2024, at which plaintiff and defendant appeared, and the Employment Department found that plaintiff quit for good cause. *Id*. at 2.

In arguing that the February 28, 2024 date is determinative, plaintiff relies on the Second Circuit's opinion in *Olivieri v. Stifel, Nicolaus & Co.*, in which the court held that "[p]ursuant to the continuing violation doctrine, the statute of limitations for hostile work environment claims runs from the time of the last act in the continuing course of discriminatory or retaliatory conduct." 112 F.4th 74, 78 (2d Cir. 2024). At the same time, however, the Second Circuit has recognized the scope of the continuing violation doctrine, holding that "[t]he continuing violation doctrine allows a Title VII plaintiff to rely on a discrete act to render a hostile environment claim timely *only* if the plaintiff establishes that the discrete act was part of the ongoing, discriminatory practice that created a hostile work environment." *King v. Aramark Servs. Inc.*, 96 F.4th 546 , 561 (2d Cir. 2024) (emphasis in original). "An unrelated discrete act, different in kind from the conduct giving rise to the hostile environment, does not trigger the continuing violation doctrine." *Id.*

This accords with the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The Court reversed the decision of the Ninth Circuit, which held that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts

6 – FINDINGS AND RECOMMENDATIONS

that are plausibly or sufficiently related to that act may also be considered for the purposes of liability." *Id*. at 114. The Court ruled that while the continuing violations doctrine could be applied to hostile work environment claims, it did not apply to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Id.*

Following the Second Circuit's decisions in *Olivieri* and *King*, the Southern District of New York applied this framework in determining the applicability of the EFAA in *Hoffmann v. Mary Giuliani Catering & Events, Inc*. No. 24-CV-5910 (JPO), 2025 WL 1616859, at *2 (S.D.N.Y. June 6, 2025). There, the plaintiff alleged a hostile work environment based on the sexualization of workers and sexual remarks at the workplace, all of which occurred between "July and August of 2021—before the EFAA took effect." *Id.* The plaintiff filed suit in August 2024, after which the defendants asserted a breach-of-contract counterclaim. *Id.* at *1. The plaintiff then amended her complaint to allege that the counterclaim constituted retaliation and that the EFAA applied. *Id.* at *2. The court rejected that argument, reasoning that the hostile work environment allegations and the counterclaim were "distinct in nature, with a three-year gap in between, during which [the plaintiff] was no longer employed [by the defendants]." *Id.* Therefore, the EFAA did not apply. *Id.*; *see also Montanus v. Columbia Mgmt. Inv. Advisers, LLC*, No. 25 CIV. 2798 (PAE), 2025 WL 2503326, at *6 (S.D.N.Y. Sept. 2, 2025) (observing that "[s]ince *Olivieri*, courts in this Circuit have emphasized that the continuing violation doctrine does not permit a litigant to pursue claims based on conduct predating the EFAA by citing later dissimilar acts"); *Clay v. FGO Logistics, Inc.*, 751 F. Supp. 3d 3, 17 (D. Conn. 2024) (finding the defendant's allegedly retaliatory firing of the plaintiff for complaining about the hostile work environment and discrimination he experienced before the effective date of EFAA was not similar in kind to the pre-EFAA conduct).

7 – FINDINGS AND RECOMMENDATIONS

The Northern District of California employed similar reasoning in *Lewis v. Tesla*. Lewis alleged he was sexually harassed at work and subjected to a hostile work environment. 2025 WL 2653639 at *1. He developed a psychiatric disability, and his physician ordered him to stop working on July 14, 2021. *Id.* He was subsequently terminated from employment on August 15, 2023. *Id*. The court recognized that the continuing violations doctrine "sets out a framework for evaluating accrual where claims are composed of a series of separate acts that collectively constitute one unlawful . . . practice." *Id.* at *2 (quoting *Morgan*, 536 U.S. at 103) (simplified). The court observed, however, that "the only action alleged to have occurred on or after March 3, 2022 was Lewis's termination," and found that "[b]ecause Lewis has presented no facts to support a finding that any harassing conduct took place on or after March 3, 2022, the Court cannot find that Lewis's sexual harassment claim accrued on or after the EFAA's enactment." *Id.* at *3.

The same reasoning applies with equal force here. Plaintiff contends that her manager's appearance at her unemployment appeal hearing is a form of retaliation. Resp. 5, ECF 19. But by the time of the hearing on February 28, 2024, over three years had elapsed since plaintiff had worked for defendant. The manager's act of testifying at an unemployment benefits hearing is also distinct in nature to the sexual harassment allegations that plaintiff made about a different employee in 2020. Thus, the manager's appearance at plaintiff's hearing cannot constitute a claim that renders the EFAA applicable.

Plaintiff also alleges that "[s]ince separating from employment with [defendant], [she] has applied for roles that she is well-qualified for at other banks but has not been interviewed nor hired for employment at any of those banks." Compl., ¶ 37. Under the same analysis discussed above, this alleged claim is distinct in nature and did not occur in the same time frame as the

8 – FINDINGS AND RECOMMENDATIONS

sexual harassment; therefore, the EFAA does not apply. Moreover, beyond generalized assertions, plaintiff provides no supporting facts, such as when she applied for these positions, the types of jobs she sought, or the information she included in her applications. Without more specifics, this allegation is too vague and conclusory to plausibly state a claim for retaliation. In sum, the EFAA does not apply because plaintiff's claims accrued prior to March 3, 2022.

### III.     Plaintiff's dispute with defendant arose before March 3, 2022.

Plaintiff also contends that the "dispute" with defendant arose after March 3, 2022. The term "dispute" is not defined in the statute, but the Third, Sixth, and Eighth Circuits have each addressed its meaning in the context of the EFAA. The Third Circuit has held that a dispute arises "when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position." *Cornelius v. CVS Pharmacy Inc.*, 133 F. 4th 240, 247 (3d Cir. 2025). While not tethered to a particular process, it requires some opposition between the employer and employee. *Id.* The Sixth Circuit has interpreted the term similarly. Acknowledging that, in many cases, a dispute will arise after the claim accrues, the court explained that a dispute can consist of sending a demand letter, filing an administrative charge, requesting arbitration, or commencing a lawsuit. *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 409 (6th Cir. 2025). Lastly, the Eighth Circuit applied the ordinary meaning of "dispute," defining it as a "conflict or controversy, esp[ecially] one that has given rise to a particular lawsuit." *Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 898 (8th Cir. 2024) (citing *Black's Law Dictionary* 593 (11th ed. 2019)).

At issue in this case is when an express or constructive disagreement arose between the parties. Defendant contends that the dispute arose between the parties before March 3, 2022, on

either (1) March 10, 2020, when Human Resources ("HR") closed its investigation; (2) September 8, 2020, when plaintiff wrote a letter to HR stating there was a "work dispute situation"; or (3) June 21, 2021, when defendant appealed the Oregon Employment Department ("OED") finding. Mot. Compel Arb. 10-11, ECF 11.[1] In contrast, plaintiff argues that the dispute did not arise until she filed this lawsuit on February 4, 2025. Resp. 5, ECF 19. Alternatively, plaintiff claims the dispute arose at the unemployment appeal hearing on February 28, 2024, when defendant disputed plaintiff's entitlement to unemployment benefits. *Id.*

Taking both parties' contentions one by one, it cannot be said that there was either an express or constructive disagreement between the parties on any of these dates. Plaintiff admits that when HR conducted and concluded its investigation in March 2020, it "instituted a policy prohibiting [the employee] from physically occupying the same premises as plaintiff." *Id.* at 2. Thus, at that point, defendant was taking steps to accommodate plaintiff's concerns. Even on September 8, 2020, after plaintiff sent a letter to HR, she received a call from HR telling her that they had called and notified the Regional Director. Compl. ¶ 33. Defendant's response to plaintiff's letter shows that defendant was continuing to work with plaintiff. However, the situation changed when OED determined that plaintiff "quit work because [she] did not feel safe due to harassment from a coworker." Riffle Decl., Ex. E at 6, ECF 13-2. On June 21, 2021, defendant appealed, stating that it "respectfully disagrees with the state's determination and requests an unemployment hearing to be scheduled." *Id.* at 2. At this point, a dispute arose because defendant opposed plaintiff's application for unemployment benefits. The timing of the appeal hearing in 2024 is immaterial, as the dispute arose when defendant appealed OED's

---

[1] In its motion, defendant identifies five incidents on which a "dispute" could have arisen. The court, however, considers only three of those incidents, as the remaining ones present weaker circumstances that a disagreement occurred.

decision. The timing of the present lawsuit is also immaterial because the disagreement with OED's decision occurred prior to the filing of this lawsuit. In sum, the dispute, like the claims, arose prior to March 3, 2022, and the EFAA therefore does not apply.

## RECOMMENDATIONS

Defendant's Motion to Compel Arbitration should be granted in that the parties should be compelled to arbitrate and this case should be stayed pending the completion of arbitration proceedings.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Wednesday, October 08, 2025. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED September 24, 2025.

                                                  /s/ Youlee Yim You
                                                  Youlee Yim You
                                                  United States Magistrate Judge